UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHONDOLYN R. BLEVINS, | CASE NO. C21-0073JLR |
| Plaintiff, | ORDER |
| v. | |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | |
| Defendant. | |

# I. INTRODUCTION

Before the court is Defendant Bureau of Alcohol, Tobacco, Firearms and Explosive's ("ATF") motion for summary judgment. (MSJ (Dkt. # 55); Reply (Dkt. # 65).) Plaintiff Shondolyn R. Blevins opposes the motion. (Resp. (Dkt. # 63).) The

ORDER - 1

1 | court has reviewed the motion, the relevant portions of the record, and the governing law.

2 | Being fully advised,[1] the court GRANTS ATF's motion for summary judgment.

## II.   BACKGROUND

In 2012, Ms. Blevins was convicted of several crimes in federal court, which included being a felon in possession of a firearm and possession of a firearm in furtherance of drug trafficking. (*See* Siple Decl. (Dkt. # 57) ¶ 8; MSJ at 1); *United States v. Blevins*, 755 F.3d 312, 315 (5th Cir. 2014) (providing background regarding Ms. Blevins's charges and affirming her convictions). While Ms. Blevins was under investigation for these crimes, ATF seized Ms. Blevins's .380 caliber weapon. (MSJ at 1.) Since her conviction, Ms. Blevins has submitted two Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests to ATF in 2019 and 2020, respectively, requesting information about her criminal case file and the firearm involved in her criminal case. (*See generally* Siple Decl. ¶ 4, Ex. A ("First FOIA Request"); *id.* ¶ 7, Ex. D ("Second FOIA Request").)

Ms. Blevins submitted her first FOIA request on April 16, 2019 (the "2019 FOIA request"). (*See* First FOIA Request.) The 2019 FOIA request sought: (1) "all records related to: Shondolyn Rochelle Blevins #15329-035 Criminal Action No. 12-00142" and (2) "all information regarding the firearm(380) involved in this case." (*Id.* (capitalization omitted).) Upon receipt, ATF assigned the request to the Information and Privacy Governance Division ("IPG"). (Siple Decl. ¶ 4.) An IPG processor reviewed the 2019

---

[1] Neither party requests oral argument (*see* MSJ, Resp.), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

FOIA request and implemented the standard ATF search protocol, searching the TECS and N-Force databases, the sole online databases used by ATF for law enforcement purposes, for relevant documents. (*See id.* ¶¶ 4, 9; Siple Suppl. Decl. (Dkt. # 66) ¶ 4.) These databases "flagged" the existence of a case, prompting IPG to reach out to the applicable field division to inquire about responsive documents. (Siple Suppl. Decl. ¶ 7; Siple Decl. ¶ 10.) In this case, because the crimes occurred in Louisiana, IPG determined that the New Orleans Field Division was the proper division to contact. (Siple Supp. Decl. ¶ 7.) IPG's search request with the New Orleans Field Division also involved searches with relevant satellite offices connected to that division, including a field office in Shreveport, Louisiana. (Siple Suppl. Decl. ¶¶ 5-7.)

By April 24, 2019, ATF's search in response to Ms. Blevins's 2019 FOIA request located 193 responsive pages of documents. (Siple Decl. ¶¶ 4-5, Ex. B.) On September 18, 2019, ATF sent a final response to Ms. Blevins, which included 185 pages of responsive material, some of which were redacted in part or in full in accordance with FOIA withholding exemptions. (*Id.*) These responsive materials included a Report of Destruction for a .380 caliber handgun. (Siple Decl. ¶ 5.) The remaining 8 pages were property of the FBI and were therefore referred to them for a direct response; the FBI released the remaining pages to Ms. Blevins within a few weeks. (*Id.* ¶ 6.)

Ms. Blevins did not appeal ATF's response to her 2019 FOIA request. (*Id.* ¶ 5.) Instead, she submitted a second FOIA request the next year on March 3, 2020 (the "2020 FOIA request"). (*See* Second FOIA Request.) The 2020 FOIA request sought: (1) "all records related to: the firearm associated with criminal case 3:12-cr-00142," a "Lincoln

.380 semi-auto"; (2) "orders of destruction in place prior to [her] federal trial in August 2012"; and (3) "any information relating to the possession of this firearm by the Louisiana State Police." (*Id.*)

In a response letter dated March 18, 2020, ATF denied Ms. Blevins's 2020 FOIA request, explaining in relevant part that:

> [S]ince 1979, Federal law has prohibited ATF from expending funds to maintain a national registry of firearms, which includes lists of purchasers and the firearms purchased by private individuals. Since ATF does not maintain a database of firearms purchasers or firearm-transaction information other than those associated with a law enforcement investigation, we are unable to provide the information requested.

(Siple Decl. ¶ 11, Ex. E ("Final Response Letter") at 1.) The letter explained that this response is a "standard notification" given to all of its requesters and "should not be taken as an indication that the excluded records do, or do not, exist." (*Id.*) The letter also provided contact information if Ms. Blevins had further FOIA questions, as well as instructions on how to administratively appeal ATF's response. (*Id.* at 1-2.)

Although the response letter was dated March 18, 2020, this letter was not mailed until August 13, 2020. (Siple Decl. ¶ 7.) ATF's response did not reference Ms. Blevins's 2019 FOIA request or explain that its present denial was based on it already having provided Ms. Blevins with all responsive records. (*See generally* Final Response Letter.)

Ms. Blevins administratively appealed ATF's response to her 2020 FOIA request. (Siple Decl. ¶ 7; *see id.*, Ex. F ("OIP Appeal Response").) The Office of Information Policy ("OIP") affirmed ATF's decision to deny the request, explaining that "ATF's

ORDER - 4

response was correct" and that "it does not maintain records such as those that [Ms. Blevins] described." (OIP Appeal Response at 1-2.)

On January 20, 2021, Ms. Blevins filed a complaint alleging ATF's response to her 2020 FOIA request was inadequate. (*See generally* Comp. (Dkt. # 5); FAC (Dkt. # 10).) She later amended this complaint. (*See generally* FAC.) Ms. Blevins argues ATF wrongfully refused to provide her materials responsive to her 2020 FOIA request, implying that ATF had such materials because it produced materials in response to her 2019 FOIA request. (*See id.* at 1-2.) Following the initiation of this suit, ATF conducted a supplemental search in 2022 to look for any additional records, "including any records which were newly established." (Siple Decl. ¶ 12.) ATF utilized the same search process as it did for the 2019 FOIA request, searching the TECS and N-force databases as well as contacting the New Orleans Field Division. (*Id.*) While no additional records were located in the database searches, the Field Division produced 2 pages of documents that belonged to the FBI, as well as a signed version of the Report of Destruction which had already been produced to Ms. Blevins, unsigned, in the response to her 2019 FOIA request. (*Id.*, Ex. G ("Supp. Final Response Letter").)

On September 30, 2021, the court granted Ms. Blevins's motion to appoint counsel pursuant to this District's Pro Bono Plan. *See* W.D. Wash. General Order No. 16-20 (Dec. 8, 2020); (Order Appointing Pro Bono Counsel (Dkt. # 29) at 1)).

On January 17, 2022, ATF filed this motion for summary judgment. (*See generally* MSJ.) ATF argues that it "diligently searched and timely responded with all responsive information it could locate, including a Certification of Destruction for the

firearm in question." (*Id.* at 1-2.) Ms. Blevins counters that ATF did not conduct an adequate search as required by FOIA when it "summarily denied" her 2020 FOIA request. (Resp. at 2.)

### III. ANALYSIS

As a threshold matter, this court addresses whether Ms. Blevins's failure to administratively appeal her 2019 FOIA request precludes the present litigation regarding her 2020 FOIA request. Next, the court addresses whether summary judgment in ATF's favor is appropriate.

**A. Whether Ms. Blevins's Failure to Exhaust Administrative Remedies for Her 2019 FOIA Request Precludes Litigation Regarding Her 2020 FOIA Request**

When Congress passed FOIA, 5 U.S.C. § 552, it sought to "permit access to official information long shielded from public view" in order to "pierce the veil of administrative secrecy" that often hid the workings of federal agencies. *Ctr. for Investigative Reporting v. U.S. Dep't of Just.*, 14 F.4th 916, 922 (9th Cir. 2021) (quoting *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Federal agencies have a duty to construe FOIA requests liberally. *Yagman v. Pompeo*, 868 F.3d 1075, 1080 (9th Cir. 2017).

A requestor must exhaust his administrative remedies under FOIA before filing suit. *Aguirre v. U.S. Nuclear Regul. Comm'n,* 11 F.4th 719, 726 (9th Cir. 2021); *see Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) ("FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review."). A requestor who is dissatisfied with an agency's response to their FOIA request may exhaust their

administrative remedies by appealing that decision within the agency within 90 days after the date of an adverse determination. 5 U.S.C. § 552(a)(6)(A)(i)(III).

ATF argues that Ms. Blevins did not administratively exhaust her remedies for the 2019 FOIA request and she is therefore barred from raising any issues concerning ATF's response to either request in court. (MSJ at 6-7 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 71 (D.C. Cir. 1990) (holding judicial review of plaintiff's claims was precluded by plaintiff's failure to exhaust administrative remedies but that defendants properly responded to plaintiff's FOIA request))); *see also Aguirre*, 11 F.4th at 726 (citing *Oglesby*, 920 F.2d at 57-64). Ms. Blevins counters that whether she exhausted remedies with respect to her 2019 FOIA request is not relevant because her present complaint concerns ATF's summary denial of her 2020 FOIA request. (Resp. at 1-2.) Ms. Blevins further argues that she constructively exhausted her 2019 FOIA request because the purposes of exhaustion were fulfilled when ATF and IPG reviewed the 2019 search while reviewing the 2020 FOIA request. (Resp. at 3.)

The court concludes that Ms. Blevins's unexhausted 2019 FOIA request is not relevant to the court's adjudication of her claims regarding her 2020 FOIA request. It is undisputed that Ms. Blevins filed an administrative appeal regarding her 2020 FOIA request to OIP. (OIP Appeal Response at 1; *see also* Resp. at 1-2; MSJ at 5.) Although ATF attempts to argue that Ms. Blevins's failure to exhaust her administrative remedies with respect to the 2019 FOIA request precludes this court's review of her 2020 FOIA request (*see* MSJ at 6), it does not provide any legal authority for the position that a

ORDER - 7

plaintiff is barred from bringing a suit for a new FOIA request for mere failure to administratively exhaust an earlier, similar FOIA request (*see generally id.*; Reply).[2]

Accordingly, because Ms. Blevins has exhausted her administrative remedies with respect to her 2020 FOIA request, the court will now address whether the court should enter summary judgment in ATF's favor with respect to that request.

**B.  Whether Summary Judgment is Appropriate**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved. *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1227 (W.D. Wash. 2021). The court conducts a *de novo* review of an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). If there is a genuine issue of material fact, the court should proceed to a bench trial or adversary hearing. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016).

---

[2] Because ATF fails to offer support for this proposition, and because Ms. Blevins's only claim involves her 2020 FOIA request (*see* FAC at 1-2), the court need not determine whether Ms. Blevins constructively exhausted her administrative remedies with respect to her 2019 FOIA request.

ORDER - 8

Courts follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case. *Sea Shepherd Legal*, 516 F. Supp. 3d at 1227. First, courts must evaluate whether the search was adequate. *See Silbaugh v. Pizzella*, No. C18-1182JCC, 2019 WL 4392502, at *3 (W.D. Wash. Sept. 13, 2019) (citing *Zemansky v. U.S. Env't Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985)). If the agency satisfies its initial burden, the court must then determine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *Sea Shepherd Legal*, 516 F. Supp. 3d at 1227. The court need not reach the second step in this case because Ms. Blevins challenges only the adequacy of the search. (*See generally* FAC; Resp.)

Under the first step, the Government must prove that the search was adequate "beyond material doubt." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 780 (9th Cir. 2022). Furthermore:

> [t]his approach properly places a concrete burden of proof on the Government, requiring an agency to show that it has undertaken all reasonable measures to uncover all relevant documents. This standard also gives teeth to the adequacy standard by preventing agencies from blithely asserting adequacy without backing up such an assertion.

*Id.* (noting that this heavy burden appropriately reflects the purpose and policy of FOIA); *see N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").

An agency can establish its search was adequate by submitting reasonably detailed, nonconclusory affidavits in good faith. *Transgender L. Ctr.*, 46 F.4th at 780-81. The affidavits need not provide "meticulous documentation the details of an epic search for the requested records." *Id.* at 780. The adequacy of a search is not judged by what the search produces. *Id*. Instead, it is judged by the methods used to carry out the search. *Id*. (explaining that this standard "requir[es] an agency to show that it has undertaken all reasonable measures to uncover all relevant documents.").

For example, in *Davis Wright Tremaine LLP v. United States Customs & Border Protection,* a district court determined that United States Customers and Border Protection ("CBP") failed to conduct an adequate search as a matter of law because the search lacked detail; was not reasonably thorough; was overly fragmented; did not establish that CBP searched for all relevant documents, instead only looking for those most likely to be responsive; and failed to indicate why further searches would be unreasonable. *Davis Wright Tremaine LLP v. U.S. Customs & Border Prot.*, No. C19-0334RSM, 2020 WL 3258001, at *5-6 (W.D. Wash. June 16, 2020); *see also Transgender L. Ctr.*, 46 F.4th at 780 (reversing district court's grant of summary judgment in the agencies' favor in light of, among other things, indications that agencies overlooked responsive materials).

When a requestor files two duplicative FOIA requests, the responding agency's obligations in responding to the second request are not clearly defined by controlling authority. Some courts have found that an agency should explain its decisions not to conduct certain searches or pursue certain leads. *See Council on Am.-Islamic*

*Rels.-Washington* (*CAIR*) *v. U.S. Customs & Border Prot.*, 492 F. Supp. 3d 1158, 1165 (W.D. Wash. Oct. 5, 2020) (finding that CBP's search was inadequate as a matter of law where CBP failed to adequately explain in briefing why they did not consider pursuing leads provided by CAIR, or explain why it would be unreasonable to conduct certain searches); *see also Davis Wright*, 2020 WL 3258001, at *5-6 (finding that "while perhaps not explicitly CBP's burden to bear, CBP provides no indication" of why conducing further searches would be "unreasonable"). However, neither *CAIR* nor *Davis Wright* addressed an agency's obligations in responding to a second FOIA request that is largely duplicative of the first. *See CAIR*, 492 F. Supp. at 1162 (describing a single FOIA request); *Davis Wright*, 2020 WL 3258001, at *2 (describing two, non-duplicative FOIA requests). Moreover, at least one court has cast doubt on the utility of requiring an agency to produce duplicative materials in response to substantially similar FOIA requests. *See Stein v. U.S. Sec. & Exch. Comm'n*, 266 F. Supp. 3d 326, 340 n.4 (D.D.C. 2017) (explaining in dicta that "it cannot be the case that if a FOIA plaintiff submits a request for 'Document A,' which the agency produces, that the agency need produce Document A again if the plaintiff submits another request for 'Document A' and 'Document B' a year later if the agency can demonstrate that it produced Document A the first time") (holding search inadequate for unrelated reasons).

Thus, where, as here, an agency responds to a plaintiff's first FOIA request, but fails to adequately respond to her second, nearly identical request, *Stein* suggests a court may be justified in considering the full context of her requests without frustrating the

purposes of FOIA.[3]  *See Stein*, 266 F. Supp. 3d at 340 n.4.  In other words, if the agency's first response was adequate as a matter of law, requiring exactly the same response to a subsequent request may be unnecessary.  *See id*.

Here, the court must determine whether ATF's response to Ms. Blevins's 2020 FOIA request was adequate beyond material doubt, since that is the only request for which Ms. Blevins administratively exhausted her appeal (and therefore, the only request before the court).  But, because the 2019 and 2020 FOIA requests were largely duplicative, the court will consider whether responses to both requests were adequate.  The court analyzes each in turn.

### 1. Adequacy of the 2019 Search

ATF argues the 2019 search was adequate because it searched the only two databases that would contain potentially responsive documents, found such documents, and produced them.  (MSJ at 9.)  ATF further argues that any additional information that it might have found would have been in Ms. Blevins's case file, which it also produced.  (*Id*.)  Ms. Blevins argues that ATF's 2019 search was inadequate under FOIA standards.[4]  (Resp. at 9-10.)  As noted above (*see supra* § III.B), the court will review the adequacy of Ms. Blevins's 2019 request *de novo*, 5 U.S.C. § 552(a)(4)(B).

---

[3] Indeed, whereas the requestor in *Stein* asked first for only Document A and then filed a subsequent request for Documents A and B, *see Stein*, 266 F. Supp. 3d at 340 n.4, Ms. Blevins did the opposite, filing her broadest request first and later seeking a subset of the documents initially requested, (*compare* First FOIA Request, *with* Second FOIA Request).

[4] However, the court need not consider her arguments because Ms. Blevins failed to administratively exhaust her 2019 FOIA request, and therefore waived these arguments.  *See Toensing v. U.S. Dep't of Just.*, 890 F. Supp. 2d 121, 141 (D.D.C. 2012) (holding that any issues relating to unexhausted FOIA requests are waived).

1  The court, reviewing ATF's response *de novo*, finds that ATF's 2019 search was
2  adequate beyond material doubt.  ATF submitted reasonably detailed, nonconclusory
3  affidavits in good faith, which spelled out how ATF conducted its search.  (*See generally*
4  Siple Decl.; Siple Supp. Decl.); *Transgender L. Ctr.*, 46 F.4th at 780-81.  Courts in other
5  jurisdictions have routinely upheld similar search processes by ATF.  *See, e.g., Wilson v.*
6  *United States*, 86 F. Supp. 3d 14, 20 (D.D.C. 2015) (finding that ATF FOIA search
7  forwarded to Chicago Field Division which included an N-Force search as described in
8  supporting declaration was reasonable under the circumstances); *Hall v. U.S. Dep't of*
9  *Just.*, 273 F. Supp. 3d 77, 85 (D.D.C. 2017) (finding that ATF FOIA search forwarded to
10 Louisville and Charlotte Field Divisions which included an N-Force and TECS search as
11 described by declarant was reasonably calculated to produce responsive records).  For
12 these reasons, the court finds that ATF has shown that it undertook "all reasonable
13 measures to uncover all relevant documents" in response to the 2019 FOIA request.  *See*
14 *Transgender L. Ctr.*, 46 F.4th at 780.  The 2019 search, therefore, was adequate.

15  2.  Adequacy of the 2020 Search

16  ATF argues that it adequately responded to the 2020 search because it already
17 produced "all documents it had in response to [Ms.] Blevins's first request."  (MSJ at 8.)
18 ATF explains that "because [it] adequately responded to the first request, there was
19 nothing more to provide her second request."  (*Id.*)  Ms. Blevins's 2019 request was
20 broad in nature, asking for records relating to her criminal conviction and the underlying
21 weapon.  (*See* First FOIA Request.)  Her 2020 request was narrower in scope, asking for
22 specific records, but all of those records would necessarily have been produced in

response to the 2019 request. (*Compare* First FOIA Request, *with* Second FOIA Request; *see also* MSJ at 7-8.) Ms. Blevins counters that ATF failed to produce any records in response to her 2020 FOIA request, noting that ATF admitted it did not conduct a 2020 search, failed to explain that its denial was based on its view that the request was duplicative of her 2019 request, and indicated that it had no further responsive records. (Resp. at 8.) In support of her argument, Ms. Blevins analogizes ATF's conduct to that of CBP in *CAIR*. (*Id.* at 8-9 (citing *CAIR*, 492 F. Supp. 3d at 1165).) Ms. Blevins argues that like CBP, ATF failed to produce any records in response to Ms. Blevins's 2020 FOIA request and provided no explanation for summarily denying the request. (*Id.*)

In response, ATF notes that "while in hindsight, [it] might have better articulated the reasons it did not conduct a search in 2020, that does not change the fact that there were no new documents." (Reply at 2.) Further, ATF argues that even though it did not explain why it did not provide responsive documents or reference the 2019 search, ATF's 2020 response was adequate because it was based on duplicative nature of the request, a "context [that] should be clear . . . taking the responses to both requests together." (*Id.*)

The court finds that ATF's 2020 search was adequate beyond a material doubt. Although ATF did not explain the basis for not conducting a search in response to the 2020 request, it had no legal obligation to do so. Neither *CAIR* nor *Davis Wright* stand for the position that an agency is obligated to articulate its reasoning or search process in its *response* to a FOIA request. (*See supra* § III.B); *see also CAIR.*, 492 F. Supp. 3d at 1165; *Davis Wright*, 2020 WL 3258001, at \*5-6. At most, those cases simply require an

agency to explain its decisions to not conduct certain searches or follow certain leads when defending its decisions in court. Here, ATF submitted evidence establishing that (1) it conducted an adequate search in response to the 2019 request and (2) a duplicative search in response to the 2020 request would likely produce the same set of documents it has already provided Ms. Blevins. (*See generally* Siple Decl.; Siple Supp. Decl.) As in *Stein*,[5] ATF has adequately explained to the court that it produced the requested records in response to the 2019 FOIA request, and again after this litigation commenced. *Stein*, 266 F. Supp. 3d at 339; (*see also* Siple Decl. ¶¶ 4-5, 9-13; Siple Supp. Decl. ¶¶ 4-8). Were the court to find in Ms. Blevins's favor here, it could only require ATF to produce those same records again. *See Stein*, 266 F. Supp. 3d at 340.[6]

In sum, summary judgment in ATF's favor is appropriate because the evidence, viewed in the light most favorable to Ms. Blevins, demonstrates there is no issue of material fact as to whether ATF's 2019, 2020, and 2022 responses to Ms. Blevins's FOIA requests were adequate beyond material doubt.

---

[5] In *Stein*, the agency at issue argued it satisfied its FOIA obligations and need not search for responsive documents because it had already produced, and the requestor had already seen, all relevant documents during previous litigation. *Stein*, 266 F. Supp. 3d at 340. The court explained that "the onus is on the agency to search this set of materials for documents responsive to [the plaintiff's] second category of requests, or else explain to the Court why those materials are unlikely to contain responsive documents." *Id*. at 340-41.

[6] In the future, it would be wise for ATF to provide requestors with a brief explanation for denials in circumstances such as these. At the very least, ATF could have referenced its 2019 response in its 2020 response to Ms. Blevins. Such explanations are not uncommon. *See, e.g.*, *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 636 F. Supp. 2d 1081, 1095 (E.D. Cal. 2009) (referencing letter agency sent to business explaining that the business's FOIA request was duplicative of its earlier requests and that appeal rights had already been provided).

## IV. CONCLUSION

For the reasons stated above, the court GRANTS ATF's motion for summary judgment (Dkt. # 55) and ENTERS judgment in ATF's favor.

Dated this 28th day of March, 2023.

JAMES L. ROBART
United States District Judge